# UNITED STATES

### v.

**Specialist Five George C. OUTLAW, 241–78–3939, U. S. Army, Personnel Control Facility, Headquarters Command, XVIII Airborne Corps and Fort Bragg, Fort Bragg, North Carolina.**

### CM 432011.

U. S. Army Court of Military Review.

Sentence Adjudged 21 March 1974.

Decided 30 March 1976.

---

Appellate Counsel for the Accused: CPT Robert H. Herring, JAGC; CPT David A. Shaw, JAGC; CPT Albert T. Berry, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT William A. McNutt, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

Before CARNE, MITCHELL and MOUNTS, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

### Case Summary

The accused was convicted by a general court-martial with members of two specifications of robbery in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922, one specification of premeditated murder in violation of Article 118(1), Uniform Code of Military Justice, 10 U.S.C. § 918(1), one specification of aggravated assault in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928, and one specification of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The case was referred as noncapital. The sentence as approved is set out above.

### Operative Facts

The facts which are necessary to the determination of the crucial issue in this case can be briefly summarized. Sergeant Romero and Private First Class Boyd were in a jeep on a military police patrol. They received a call on their radio that a robbery was in progress and were given a description of the two suspects involved in the robbery. They proceeded toward the robbery site and discovered the accused and a man named Steele, both carrying weapons and fleeing from the situs of the robbery. When the accused and Steele ran near the jeep, the jeep stopped and Sergeant Romero jumped out of the jeep with his weapon in his hand. The accused and Steele were within a few feet of Sergeant Romero and both had their weapons pointed at Sergeant Romero's face before Sergeant Romero could raise his weapon. Steele told Sergeant Romero to drop his weapon. Sergeant Romero did not drop his weapon but did take about 15 steps backward. The accused and Steele walked toward him, with their weapons ready to fire, and Steele told Sergeant Romero to drop the weapon or he would kill him. Sergeant Romero placed his weapon at his feet and then Private First Class Boyd came up behind the accused and Steele. Sergeant Romero made two separate requests of Private First Class Boyd to shoot the accused and Steele. Finally, Private First Class Boyd shot Steele. Steele fell to the ground and the accused jumped behind the passenger side of the jeep. The accused fired his weapon three times in the direction of Private First Class Boyd. Private First Class Boyd then held his stomach in pain and stumbled into a ditch. However, the fatal shot which

killed Private First Class Boyd was not fired by the accused but by Steele, who fired at Private First Class Boyd at approximately the same time as the accused was firing his third shot in the direction of Private First Class Boyd. The accused then told Sergeant Romero to lie down and the accused put Steele and the bag of money taken from the robbery site into the jeep and the accused began to drive the jeep away. Sergeant Romero picked up his weapon and fired at the jeep. The accused fell out of the jeep and was subsequently taken to a hospital.

### Issue

Appellate defense counsel alleges that the evidence is insufficient as a matter of law and fact to sustain a conviction of premeditated murder. In furtherance of this position the defense alleges that the accused did not shoot at Private First Class Boyd but merely moved around the jeep to avoid being shot and he fired three shots in the air to attempt to scare Private First Class Boyd and to keep him from coming around the jeep.

### Decision

■■■ This Court finds that there is convincing evidence to establish beyond any reasonable doubt that the accused shot at Private First Class Boyd and did not shoot in the air as contended by the defense. Having adopted the version of the facts of this case as set out in the operative facts portion of this opinion and more specifically characterized above as to the direction of the accused's firing at Private First Class Boyd, this Court has no difficulty in sustaining the findings of guilty of premeditated murder. The accused was not charged under Article 118(4), Uniform Code of Military Justice, on a theory of felony murder (It is assumed that the felony of robbery was construed to be terminated at the time of the homicide.), but under Article 118(1) as an aider and abettor and therefore a principal to the killing. The accused

did not actually fire the bullet which caused the death of Private First Class Boyd. In order for the accused to be found guilty on the theory of aiding and abetting, the proof must show that the alleged aider and abettor did in some way associate himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his actions to make it successful. Assisting, encouraging or inciting may be manifested by acts, words, signs, motions or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime. *United States v. Ford*, 12 U.S.C.M.A. 31, 30 C.M.R. 31 (1960); *United States v. McCarthy*, 11 U.S. C.M.A. 758, 29 C.M.R. 574 (1960). In addition, the aider and abettor must share the criminal intent or purpose of the active perpetrator of the crime, and must by his presence aid, encourage or incite the major actor to commit it. *United States v. Jackson*, 6 U.S.C.M.A. 193, 19 C.M.R. 319 (1955). The actions of both the accused and Steele show that they intended with premeditation to kill Private First Class Boyd. They supported each other in a common venture with weapons drawn toward Sergeant Romero with a threat to kill made by Steele. When Private First Class Boyd attempted to stop their actions, Private First Class Boyd was fired upon by both the accused and Steele. Steele's bullet killed Private First Class Boyd. Steele's firing of his weapon under these circumstances establishes a premeditated design to kill. At the same time the accused was actively supporting the common venture by firing at Private First Class Boyd with the premeditated intent to kill him, particularly in view of the three separate firings by the accused. It was purely fortuitous that the accused was not himself the one who actually shot Private First Class Boyd. The accused by his deliberate course of conduct demonstrated a premeditated intent to kill and, in addition, supported and shared a like intent with Steele.

Accordingly, the findings of guilty and the sentence are affirmed.